SO ORDERED,

*Katharine M. Samson*

**Judge Katharine Samson**
**United States Bankruptcy Judge**
**Date Signed: February 12, 2014**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:  RICHARD N. KENNEDY**                    **CASE NO. 13-51219**

**ALLEGED DEBTOR**                                              **CHAPTER 7**

## MEMORANDUM OPINION AND ORDER

This matter came before the Court for hearing on January 31, 2014 (the "Hearing") on the Chapter 7 Involuntary Petition ("Petition for Relief"), (Dkt. No. 1), filed by Brandon Woodward, Carla Harper, and Haley Woodward (the "Petitioning Creditors"), and the Answer and Motion to Dismiss Involuntary Petition and for Other Relief, (Dkt. No. 4), filed by alleged debtor Richard N. Kennedy ("Kennedy"). Also before the Court is the Motion for Appointment of a Trustee, (Dkt. No. 85), filed by the Petitioning Creditors.[1] At the Hearing, Jon Mims of Rawlings & MacInnis, P.A. appeared on behalf of the Petitioning Creditors and William H. Leech and Timothy J. Anzenberger of Copeland, Cook, Taylor & Bush, P.A. ("Copeland") appeared on behalf of Kennedy. The parties stipulated to certain facts and thirty-seven exhibits were entered into evidence.[2] Brandon Woodward and Carla Harper were present at the hearing, but were not

---

[1] The Court did not take up the Motion for Appointment of a Trustee at the Hearing.

[2] Kennedy introduced 30 exhibits without objection. (Dkt. No. 128, Exhs 3–32). The Petitioning Creditors introduced 7 exhibits: Exhibits 1, 2, 33, 34, 35 and 36 were introduced without objection; Exhibit 37 was admitted

called to testify. The stipulated facts and exhibits, along with the arguments of counsel, were the only evidence presented at the hearing.

After considering the motions filed and exhibits attached thereto; counsels' arguments at the Hearing; and the record, the Court finds that the Petition for Relief should be granted and states the following:

## I.   JURISDICTION

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A), & (O). This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 1018 and 7052.

## II.   FINDINGS OF FACT

Kennedy was involved in an automobile accident with the Petitioning Creditors on January 1, 2010. (Dkt. No. 4 at 2 ¶ 1). He was apparently driving the wrong way on the highway while intoxicated and the resulting wreck caused the death of Carla Harper and Brandon Woodward's one-year-old child. (Dkt. No. 90 at 8). Kennedy pleaded guilty to D.U.I. Manslaughter and was sentenced on January 27, 2011, in the Circuit Court for Marion County, Mississippi.[3] As a result of the incident, the Petitioning Creditors sued Kennedy for personal injury and wrongful death. (Dkt. No. 128 at Exh. 37). Prior to trial, the Petitioning Creditors offered to settle their claims for $50,000.00. (*Id.*). Though the settlement offer was within

---

over Kennedy's objection based on relevance; and the Court sustained Kennedy's relevance objection to Exhibit 38. (Dkt. No. 128, Exhs 1–2, 33–37).

[3] (Dkt. No. 128 at Exh. 36). As part of his sentence, Kennedy was ordered to pay restitution to Brandon Woodward and Carla Harper in the amount of $30,000 in addition to a fine of $1,500 and all costs of court. (*Id.*).

Kennedy's policy limits, his insurance company, Louisiana Farm Bureau Casualty Insurance Company ("Farm Bureau"), did not settle and the claim went to trial. (*Id.* at 17–18).

On September 5, 2012, an amended final judgment was entered in favor of the Petitioning Creditors in the Circuit Court of Marion County, Mississippi (the "Circuit Court"), in the amount of 1.5 million dollars. (Dkt. No. 128 at 2 ¶ 1–2). On January 25, 2013, $50,011.45 was deposited into the registry of the Circuit Court and the judgment was partially satisfied in that amount. (Dkt. No. 128 at 2 ¶ 3, Exh. 20). At the Hearing, counsel for both parties clarified that Farm Bureau, and not Kennedy, paid the $50,011.45 that was deposited.[4] Following the entry of final judgment, an assignment was prepared by Paul Snow—who represented Kennedy in the civil action—which would have transferred Kennedy's claims, if any, for bad faith against Farm Bureau to the Petitioning Creditors. (*Id.* at Exh. 37). Kennedy did not sign the assignment. On January 18, 2013, the Petitioning Creditors filed a Motion to Examine Judgment-Debtor in the Circuit Court. (Dkt. No. 128 at 2 ¶ 5, Exh. 23). The judgment-debtor examination of Kennedy was set for May 30, 2013, but the parties agreed to continue it prior to that date and ultimately, the examination never occurred. (*Id.* at 2 ¶ 5, Exh. 25). On April 19, 2013, the Petitioning Creditors moved for a Writ of Execution (the "Writ") on Kennedy's alleged bad faith claims against Farm Bureau. (Dkt. No. 4 at Exh. C). The Writ was issued and on May 6, 2013, the Marion County Sherriff conducted a Sherriff's sale. (*Id.* at 2–3 ¶ 2). The Petitioning Creditors were outbid at auction after entering a ten-dollar bid on the cause of action. (*Id.*).

The winning bid was for 50 dollars and was placed by Jim Moore, apparently on behalf of Blake D. Smith ("Smith"), both of whom are attorneys at Copeland. (Dkt. No. 40 at 2 ¶ 3).

---

[4] The order granting Kennedy's motion for leave to deposit sums into the court's registry also clarifies that the $50,000 deposit consists of "liability limits . . . from Kennedy's automobile insurance policy with [Farm Bureau] . . . ." (Dkt. No. 128 at Exh. 19).

There is a hand notation on the Sherriff's Assignment, which purports to sell "all claims, demands, actions, causes, [and] rights of action relating to Richard Kennedy's cause of action against [Farm Bureau] arising from and relating to the claims brought by Plaintiffs in this cause" to Smith. (*Id.* at Exh. C; Dkt. No. 1 at Exh. D). Smith represents Farm Bureau. (Dkt. No. 40 at 2 ¶ 4). Counsel of record for Kennedy are also attorneys at Copeland.

On May 8, 2013, the Circuit Court entered an order, presented by the Petitioning Creditors, finding that the Writ could not be executed for failure of process. (Dkt. No. 128 at Exh. 35). Smith, counsel for Farm Bureau and the high bidder at auction, moved to vacate the order and quash any subsequently-issued writs. (*Id.* at Exh. 26). On May 20, 2013, the Petitioning Creditors moved to set aside the sale and on May 31, 2013, the Circuit Court denied their motion, stating that they sought "equitable relief that cannot be granted by a court of law." (Dkt. No. 128 at Exh. 31). Smith's motion to vacate the order and quash any subsequently issued writ was granted on June 10, 2013. (*Id.* at Exh. 32). The Circuit Court referenced its May 31, 2013 order in granting Smith's motion. (*Id.*). On June 21, 2013, the Petitioning Creditors filed the Petition for Relief. (Dkt. No. 1). Kennedy filed his answer and motion to dismiss on August 1, 2013. (Dkt. No. 4). In his motion, Kennedy argues that the Petitioning Creditors failed to show he was not generally paying his debts as they came due as required under § 303(h); that the Petitioning Creditors filed the Involuntary Petition in bad faith; and that the Court should abstain because the involuntary proceeding is essentially a "two-party dispute." (*Id.* at 5–13).

The Petitioning Creditors filed a Motion to Disqualify Copeland as counsel for Kennedy on September 9, 2013, alleging Copeland's dual representation of both Farm Bureau and Kennedy amounted to either "an irreconcilable conflict of interest" or "a cooperative relationship in seeking to undermine [the Petitioning Creditors'] attempts at collection[,] which gives the

appearance of impropriety." (Dkt. No. 40 at 3 ¶ 6). Indeed, Copeland has and continues to represent Farm Bureau's interests and now purports to simultaneously represent Kennedy's interests in opposing the Petition for Relief. According to Smith, an attorney with Copeland, the Petitioning Creditors "threatened to obtain an excess verdict against Kennedy in the Circuit Court of Marion County, Mississippi, and to attempt to collect it in [an allegedly] manufactured bad-faith suit against Farm Bureau. Smith was involved in representing Farm Bureau with respect to legal matters arising out of the same." (Dkt. No. 34 at 2 ¶ 5). Apparently, Copeland has represented Farm Bureau's interests in connection with the Petitioning Creditor's suit against Kennedy, at least since the settlement offer. To that end, Copeland attorneys appeared at the Sheriff's sale and outbid the Petitioning Creditors to obtain Kennedy's alleged cause of action against Farm Bureau. The subsequent order setting aside the sale for failure of process was set aside by Copeland attorneys. Now, Copeland attorneys are representing Kennedy in opposition to the Petition for Relief in what appears to be an effort to prevent a trustee from attempting to set aside the Sheriff's sale on Kennedy's behalf. According to Kennedy's engagement letter with Copeland, Copeland's representation of Kennedy is limited as follows: "[t]he scope of our engagement and duties shall relate *solely* to assisting you regarding the Involuntary Bankruptcy Petition." (Dkt. No. 59 at Exh. A). (emphasis added).

A hearing was held on the Motion to Disqualify on October 25, 2013. Without reaching the merits of the Petitioning Creditors' argument, the Court subsequently denied the motion on November 12, 2013, (Dkt. No. 73), because the Petitioning Creditors lacked standing to disqualify Copeland. *See In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976) ("courts do not disqualify an attorney on the grounds of conflict of interest unless the *former client* moves for disqualification") (emphasis added).

### III.    CONCLUSIONS OF LAW

**A.  Burden of Proof**

To prevail on their request for relief, the Petitioning Creditors must establish each of the requirements under 11 U.S.C. § 303 by a preponderance of the evidence. *In re Green Hills Dev. Co., LLC*, 445 B.R. 647 (Bankr. S.D. Miss. 2011) (*citing In re Moss,* 249 B.R. 411, 418 (Bankr. N.D. Tex. 2000)). Therefore, the Petitioning Creditors must establish: (1) that Kennedy may be a debtor in Chapter 7; (2) that the Petitioning Creditors had standing to file the Petition for Relief; (3) that Kennedy is generally not paying his debts as they come due; and (4) that the debt is not subject to a bona fide dispute. 11 U.S.C. § 303(a), (b), & (h).

### *1.   § 303(a): Kennedy's eligibility to be a debtor*

The Petitioning Creditors must first show that Kennedy is eligible to be a debtor under Chapter 7. Section 303(a) provides: "[a]n involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person . . . that may be a debtor under the chapter under which such case is commenced." 11 U.S.C. § 303(a). The Petitioning Creditors filed the involuntary petition against Kennedy under Chapter 7. (Dkt. No. 1). Section 109 defines eligibility for liquidation under the Bankruptcy Code. 11 U.S.C. § 109. Kennedy does not contend that he is not an eligible debtor under Chapter 7. He is a United States Citizen and he does not appear to fall within any of the categories enumerated under § 109 that would prevent him from being a debtor in Chapter 7. Thus, the Court finds that Kennedy is eligible to be a debtor under Chapter 7.

Accordingly, the Petitioning Creditors have met their burden with respect to § 303(a) and the Court now turns to whether they had standing to file the Petition for Relief under § 303(b).

### 2. § 303(b): Standing to file an involuntary petition

Next, the Petitioning Creditors must establish they have standing to file an involuntary petition under § 303(b). Section 303(b) provides:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,3251 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $15,325 of such claims . . . .

11 U.S.C. § 303(b). There are three petitioning creditors in this case: Carla Harper, Brandon Woodward, and Hayley Woodward. (Dkt. No. 1). Hayley Woodward is a minor who is represented by Carla Harper. (*Id.*). Each petitioning creditor is the "holder of a claim against [Kennedy] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount."[5] Thus, the Petitioning creditors appear to have met the requirements of § 303(b)(1). Further, even assuming Carla Harper's representation of Hayley Woodward in this matter renders the Petitioning Creditors short of the three-creditor requirement of § 303(b)(1), the Petitioning Creditors also meet the requirements of § 303(b)(2): both Carla Harper and Brandon Woodward hold claims against Kennedy well in excess of $15,325.00.

---

[5] 11 U.S.C. § 303(b). According to the Amended Final Judgment, Brandon Woodward was awarded judgment in the amount of $250,000.00 plus post-judgment interest; Hayley Woodward was awarded $100,000.00 plus post-judgment interest; Brandon Woodward and Carla Harper, on behalf of all wrongful death beneficiaries of Caynen Woodward, were awarded $650,000.00 plus post-judgment interest; and Carla Harper, Hayley Woodward, and Brandon Woodward were collectively awarded $500,000 for punitive damages plus post-judgment interest. (Dkt. No. 128 at Exh. 3).

Accordingly, the Court finds that the Petitioning Creditors have met the standing requirements of § 303(b) and turns now to whether they have met their burden under § 303(h).

### 3. § 303(h): Whether Kennedy is generally paying his debts as they come due

Finally, the Petitioning Creditors must establish that their claim is not subject to a bona fide dispute and that Kennedy is not generally paying his debts as they become due. Section 303(h) provides that:

> [A]fter trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—
>
> > (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount . . . .

11 U.S.C. § 303(h). Kennedy does not argue that the Petitioning Creditors' claims are subject to a bona fide dispute and the Petitioning Creditors have obtained final judgment against Kennedy in state court. Thus, for the purposes of § 303(h), the Court need only consider whether Kennedy is generally paying his debts as they become due.

Determining whether an alleged debtor is generally not paying his debts as they become due "is not a balance-sheet insolvency test based on a comparison of assets and liabilities . . . . It is a factual, as distinguished from a legal, determination," which "requires consideration of both the amount of the debts not being paid and the number of creditors not being paid." *In re Green Hills*, 445 B.R. at 657 (internal quotations omitted). The determination must be made as of the date the involuntary petition is filed. *Id.* (*citing Subway Equip. Leasing Corp. v. Sims (In re Sims*), 994 F.2d 210, 222 (5th Cir. 1993)). Bankruptcy courts in the Fifth Circuit have employed a four-part test to aid in this analysis, which takes into consideration: "'(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct in her financial affairs.'" *Id.* (*quoting In re Moss,* 249 B.R. at 422).

Under this analysis, a court may find that the alleged debtor is not generally paying his debts "when he is not paying one hundred percent of his debts to only one creditor, or [when he is] paying most of his debts in number to small recurring creditors, but is not paying a few creditors that make up the bulk of his debts." *Id.* (*quoting In re Smith*, 415 B.R. 222, 231 (Bankr. N.D. Tex. 2009)).

Kennedy argues that he is generally paying his debts as they come due, including living expenses and the criminal restitution he was ordered to pay to the State of Mississippi, and that the only debt he is not current on is the judgment.[6] He also cites precedent from courts outside the Fifth Circuit, which have held that nonpayment of a single debt does not constitute a general default within the meaning of § 303(h), and urges the Court to adopt this view. (Dkt. No. 125 at 20–21). But courts in the Fifth Circuit have specifically held that defaulting on a single debt, which constitutes the majority of the alleged debtor's debt in the aggregate, amounts to the general default contemplated in § 303(h). *In re Green Hills*, 445 B.R. at 657; *In re Smith*, 415 B.R. at 231; *Aigner v. McMillan (In re McMillan)*, No. 11-47029-DML-7, 2013 WL 2445042, at *4 (Bankr. N.D. Tex. June 4, 2013). And requiring default on more than one debt cuts against the statutory language of § 303(b)(2), which clearly contemplates a single creditor initiating involuntary proceedings. Further, requiring a debtor to be in default on more than one of his debts to satisfy § 303(h) allows the debtor to completely ignore an obligation—such as a judgment—that makes up the vast majority of the debt he owes so long as he is current on all of his other recurring obligations. Thus, the Court finds the outside precedent Kennedy cited unpersuasive and elects to adhere to the decisions within the Fifth Circuit.

---

[6] (Dkt. No. 128 at 3). Specifically, Kennedy argues he is paying approximately: (1) $300.00 per month to satisfy the $30,000.00 he owes in criminal restitution; (2) $88.00 per month to the Mississippi Department of Corrections; (3) $425.00 per month in rent; (4) $100.00 per month for automobile insurance; (5) $50.00 per month to AT&T; (6) $130.00 per month to DirectTV; (7) $23.00 per month for utilities; (8) $60.00 per month to Entergy Mississippi.; and (8) revolving credit lines through Amazon.com, Sears, and Capital One. (*Id.*).

Kennedy does not argue that he is paying or has paid anything towards the $1.5 million judgment against him that was awarded to the Petitioning Creditors.[7] And though this judgment constitutes only one of his debts, it represents by far the majority of the debt he owes in general. In *In re Smith*, the alleged debtor was paying all of his recurring debts as they became due, but he was not paying a $4 million judgment the petitioning creditor obtained against him. *In re Smith*, 415 B.R. at 228–29. The court held that Smith was not generally paying his debts as they came due because "even though [he is] paying . . . his small recurring debts as they come due, he is not paying ninety-nine percent of his debts in aggregate amount." *Id.* at 231; *see also Aigner*, 2013 WL 2445042, at *4 ("an alleged debtor's failure to deal with a single, principal debt is sufficient to support a determination that [he] is not meeting his obligations as they come due."). Similarly, Kennedy is paying his monthly recurring debts and his criminal restitution, but he is not paying the judgment, which constitutes the vast majority of his debts in aggregate amount.[8]

Accordingly, the Petitioning Creditors have established that Kennedy is not generally paying his debts as they come due and they have thus established the required elements under § 303. The Court now turns to whether the petition was filed in bad faith.

### B. Bad Faith

Good faith is not an explicit requirement for granting involuntary relief under § 303.[9] And the plain language of § 303(i)—where bad faith is mentioned—contemplates bad faith only as a requirement for the recovery of actual or punitive damages *after* the involuntary petition is

---

[7] The parties do stipulate that Farm Bureau has paid  $50,011.45 towards the judgment. (Dkt. No. 128 at 3). But the plain language of the statute contemplates whether "*the debtor* is generally not paying . . . ." 11 U.S.C. § 303(h)(1) (emphasis added). Further, the money was deposited well before the petition was filed, and the Petitioning Creditors have yet to receive any of the proceeds from that deposit. (Dkt. No. 128 at 2 ¶ 3; Dkt. No. 90 at 9).

[8] "Greater than 95% of Kennedy's debt is owing to [the Petitioning Creditors]." (Dkt. No. 128 at 5 ¶16).

[9] "Section 303(b) does not require an involuntary petition be filed in good faith, any more than section 301 requires that a voluntary petition be filed in good faith." 2 Collier on Bankruptcy ¶ 303.16 (16th ed. 2013).

dismissed.[10] Thus where, as here, a petitioning creditor meets the prerequisite requirements under § 303, "a finding of bad faith [is] inappropriate." *McMillan*, 2013 WL 2445042, at *4. Nevertheless, many courts have read a good faith requirement into the bankruptcy code. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings."). But even if this judicially-created "good faith" requirement renders a finding of bad faith alone enough to dismiss an involuntary petition, the Court finds that the Petitioning Creditors have not acted in bad faith.

A determination of bad faith is generally predicated upon a finding that the petitioning creditor acted with wrongful motives, wrongful objectives, or both.[11] The Fifth Circuit has characterized bad faith within the context of an involuntary petition as a filing "'motivated by ill will, malice or for the purpose of embarrassing or harassing the debtor[s].'" *In re Sims,* 994 F.2d 201, 222 (5th Cir. 1993) (*quoting In re West Side Comm'y Hosp.*, 112 B.R. 243, 256 (Bankr. N.D. Ill. 1990)). Moreover, many courts have adopted "'a presumption that the petitioning

---

[10] Section 303(i) states:

    (i) *If the court dismisses a petition under this section* other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court *may* grant judgment--

        (1) against the petitioners and in favor of the debtor for--

            (A) costs; or

            (B) a reasonable attorney's fee; or

        (2) against any petitioner that filed the petition in bad faith, for--

            (A) any damages proximately caused by such filing; or

            (B) punitive damages.

11 U.S.C. § 303(i) (emphasis added).

[11] *McMillan,* 2013 WL 2445042, at *4 (internal citations omitted). Courts have employed several approaches in determining whether petitioning creditors have acted in bad faith for the purposes of § 303(i)(2), including: (1) an "improper use test"; (2) an "improper purpose test"; (3) an "objective test," inquiring into what a reasonable person would have believed; and (4) a "Rule 9011 test," inquiring into whether the involuntary petition was: (a) "justified based upon a reasonable inquiry into the facts and the law; and" (b) "interposed for an improper purpose." *Id.* at *5 n. 17 (*quoting In re TRED Holdings, L.P,* No. 10-40749, 2010 WL 3516171, at *7 n. 7 (Bankr. E.D. Tex. Sept. 3, 2010)).

creditor [] acted in good faith in filing an involuntary petition.'" *McMillan*, 2013 WL 2445042, at *5 (*citing In re Synergistic Techs, Inc.*, No. 07-31733-SGJ-7, 2007 WL 2264700, at *6–7 (Bankr. N.D. Tex. Aug. 6, 2007)). Thus, absent strong evidence suggesting the Petitioning Creditors acted willfully or wrongfully, the Court will not find that they acted in bad faith. Kennedy makes two major arguments as to why the Court should find the Petitioning Creditors acted in bad faith: (1) they filed the involuntary petition for an improper use or purpose without exhausting their state law remedies; and (2) they failed to investigate the propriety of filing the involuntary petition before doing so. (Dkt. No. 125 at 15–20). The Court considers each argument in turn.

### 1. *Improper Use or Purpose*

First, Kennedy claims that the Petitioning Creditors filed the involuntary petition against him for an improper purpose without first exhausting their state-law collection remedies, which, Kennedy argues, amounts to bad faith. (Dkt. No. 4 at 5 ¶ 8). Kennedy further argues that the involuntary petition should be dismissed because of this alleged bad faith. (Dkt. No. 125 at 14). But the authority he cites for this proposition—two cases out of the Eastern and Northern Districts of Texas—involved fact scenarios where the bankruptcy courts first found that the requirements for granting relief under § 303 had not been met and then found that, because the petitioning creditors had filed the petition in bad faith, sanctions were warranted pursuant to § 303(i). *See In re TRED Holdings, L.P.,* No. 10-40749, 2010 Bankr. LEXIS 3109, at *9 (Bankr. E.D. Tex. Sept. 3, 2010) ("the Court granted TRED's motion to dismiss the involuntary petition based on the failure of the petitioning creditors to present evidence in support of the petition."); *Keiter v. Stracka* (*In re Stracka*), 192 B.R. 150, 154 (Bankr. S.D. Tex. 1996) ("A finding of bad faith is necessary to support actual damages and punitive damages . . . . The [petitioning

creditors] did not have an enforceable debt against the [alleged debtors].”).  And the tests Kennedy relies on for determining bad faith—the “improper use” and “improper purpose” tests—are among the tests used in the Fifth Circuit to determine bad faith “*for the purposes of § 303(i)(2).*” *McMillan,* 2013 WL 2445042, at *4 (emphasis added).   But even assuming these tests were intended to apply where the § 303 requirements have been met, the Court finds that the Petitioning Creditors have not violated either standard.

### a.  *Improper Use*

Kennedy does not define the “improper use” test or the “improper purpose” test. Instead, he conflates the two and argues that because the Petitioning Creditors filed the Petition for Relief “for the purposes of customary debt collection,” they have acted in bad faith. (Dkt. No. 125 at 14–15). The “improper use” test is an objective test that “finds bad faith when a petitioning creditor uses involuntary bankruptcy procedures in an attempt to obtain a ‘disproportionate advantage’ for itself, rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced his own interest in a different forum.” *In re Bayshore Wire Prods Corp.*, 209 F.3d 100, 105 (2d Cir. 2000) (*quoting In re K.P. Enter.*, 135 B.R. 174, 179 n.14 (Bankr. D. Me. 1992)).

The parties agree that the Petitioning Creditors are Kennedy’s only creditors that are not being paid. (Dkt. No. 128 at 3–4). Thus it is unclear how the Petitioning Creditors would obtain a “disproportionate advantage” for themselves over Kennedy’s other creditors by filing the involuntary petition. Kennedy does not argue that this is the case; instead he relies solely on his claim that the Petitioning Creditors can advance their own interests in a different forum; therefore, their attempt to collect their debt in bankruptcy court amounts to an improper use of the bankruptcy code. (Dkt. No. 125 at 15). In support of his position, Kennedy cites two cases

from the Eleventh Circuit: *Doane v. Friendship Airways Leasing, Inc.*, No. 11-61777-CIV-MORENO, 2012 U.S. Dist. LEXIS 3423 (S.D. Fla. Jan. 11, 2012) and *In re Smith*, 243 B.R. 169 (Bankr. N.D. Ga. 1997). (Dkt. No. 125 at 15–16). But *Doane* and *Smith* are markedly different from the facts of this case.

First, in *Doane*, K&H Ventures ("K&H")—owned by Karl Doane—leased two charter airplanes to Friendship Airways Leasing, Inc. (Friendship). *Id.* at *1–2. Friendship defaulted on its payments and K&H repossessed both airplanes. *Id.* at *2. Four days later, and without pursuing *any* remedies in state court, K&H and Karl Doane each filed two separate involuntary petitions against Friendship for the balance of the overdue payments. *Id.* at *2. Ruling from the bench, the bankruptcy judge dismissed the involuntary petition because it was "Doane's first choice, not his last." *Id.* at *3. *Doane* can thus be read as requiring a petitioning creditor to at least attempt to pursue collection remedies in state court before filing an involuntary petition and not necessarily requiring that all possible state court remedies be exhausted before filing the involuntary petition. This reading comports with courts' articulation of the "improper use" test, which emphasizes the attempt at obtaining a disproportionate advantage over other creditors as the wrongful act. The availability of an alternate forum appears to be a factor indicating this attempt at obtaining a disproportionate advantage but is not itself dispositive. And where, as here, the alleged debtor's other creditors are at a disproportionate advantage over the petitioning creditors, the Eleventh Circuit had held that filing an involuntary petition is proper. *See Gen. Trading v. Yale Materials Handling Corp.,* 119 F.3d 1485 (11th Cir. 1997) (finding that protecting oneself against other creditors obtaining a disproportionate share of the alleged debtor's assets "is a proper purpose for filing an involuntary petition.") (citing *In re Better Care, Ltd.*, 97 B.R. 405, 411 (Bankr. N.D. Ill. 1989)).

Next, in *Smith* the bankruptcy court found the petitioning creditor acted in bad faith and used the bankruptcy code as a substitute for customary debt collection procedures where it claimed the alleged debtor was illegally transferring assets. *Smith*, 243 B.R. at 196–97. The *Smith* court found that the petitioner's assertions that the alleged debtor had fraudulently transferred his assets was "based entirely on conjecture and supposition." *Id.* at 197. The court went on to state that it was "of the view that unsubstantiated allegations of fraudulent transfers constitute an insufficient reason to establish the propriety of an involuntary petition." *Id.* Finally, the court was troubled with the filing because the parties were engaged in state court litigation that had been pending for two years and that court had found in the petitioning creditor's favor on the issue of liability, but the petitioning creditor failed to prove its damages and obtain a judgment to execute on, opting instead to file the involuntary petition based on its fraudulent transfer allegations. *Id.* at 198. Thus, the court found that the petitioning creditor "made *no effort* to exhaust its state court collection remedies" and "there is ample evidence to support the conclusion that [the petitioning creditor] filed the petition as a means to avoid collecting its debt under Georgia law." *Id.* (emphasis added).

*Smith* and *Doane* both involved petitioning creditors that failed to make *any* effort to exhaust their state court remedies. By contrast, in this case the Petitioning Creditors have attempted to pursue their state court collection remedies: they obtained a judgment at trial after a proposed settlement within policy limits was rejected; enrolled their judgment against Kennedy; moved for a writ of execution on Kennedy's purported cause of action against Farm Bureau; attempted to purchase the cause of action at auction and were outbid by Farm Bureau's attorneys; attempted to obtain a second writ; and attempted to set aside the Sherriff's sale. (*See* Dkt. No. 128 at 5–8). Kennedy argues that the Petitioning Creditors did not appeal the order

denying their motion to set aside the Sheriff's sale and that the Petitioning Creditors have state-law remedies they failed to pursue before filing the involuntary petition. But there is at least some question as to whether the Petitioning Creditors have the ability to set aside the Sheriff's sale in state court.[12] But there is no question that Kennedy himself has standing to seek to have the Sheriff's sale set aside, though he has no apparent interest in doing so.[13] Moreover, as discussed above, the cases cited by Kennedy establish that the *complete failure* to pursue state-law remedies may amount to bad faith in the Eleventh Circuit, but the facts in *Doane* and *Smith* fail to establish a rule requiring the exhaustion of *all possible* state-law collection remedies before filing an involuntary petition.

Accordingly, the Court finds that the filing of the involuntary petition does not constitute an improper use of the bankruptcy code and turns now to whether the petition was filed for an improper purpose.

### b. Improper Purpose

Under the subjective "improper purpose" test, "bad faith exists if the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor." *In re Bayshore*, 209 F.3d at 105. Kennedy argues that the Petitioning Creditors "filed the Involuntary Petition for an improper purpose, including filing it for the ultimate purpose of asking this Court to entertain a collateral attack on a state-court judgment." (Dkt. No. 125 at 2). But Kennedy

---

[12] In his trial brief, Kennedy argues that the Petitioning Creditors "concede that they can still appeal the Circuit Court Orders refusing to overturn the Sheriff's Sale." (Dkt. No. 125 at 17). But, in his motion to quash a subsequently issued writ of execution, Smith argued that the Petitioning Creditors lack standing to set aside the Sheriff's sale. (Dkt. No. 128 at Exh.26, 9 ¶ 30).

[13] In an affidavit signed May 29, 2013, Kennedy stated that had "no objection to the Execution Sale that occurred on May 6, 2013." (Dkt. No. 128 at Exh. 34). And the Petitioning Creditor's standing to challenge the sale is questionable. *See Indus. Sales Corp. v. Reliance Mfg. Co.*, 138 So. 2d 484, 469–70 (Miss. 1962) ("An execution sale may be avoided by any interested person who is injured thereby, and, conversely, one who is not interested and is not injured by the sale cannot question its validity.").

failed to argue or point to any evidence suggesting that the Petitioning Creditors were "motivated by ill will, malice, or a desire to embarrass or harass [Kennedy]." *Bayshore,* 209 F.3d at 105.

Accordingly, the Court finds that the Petitioning Creditors did not file the involuntary petition for an improper purpose and turns now to Kennedy's allegation that the Petitioning Creditors failed to conduct any investigation before filing the involuntary petition.

### 2. *Failure to Investigate*

Last, without citing any authority, Kennedy argues that the failure to conduct an investigation into the relevant law and facts before filing an involuntary petition constitutes bad faith. (Dkt. No. 125 at 18–19). This inquiry appears to be part of the "Rule 9011" standard for finding bad faith, which employs specific questions to reach a determination, including: (1) whether the petitioning creditor made a reasonable inquiry into relevant facts and pertinent law before filing; (2) whether the involuntary filing was well grounded in fact; (3) whether the involuntary filing was warranted by existing law or a good faith argument for change in the current law; and (4) whether the filing was undertaken for an improper purpose, such as harassment, delay, or an effort to increase costs to obtain an advantage. 2 Collier on Bankruptcy ¶ 303.16 (16th ed. 2013). Under this test, answering one or more of the first three questions in the negative *and* the last question in the affirmative can lead to dismissal of the petition. *Id.* As discussed above, the Court finds that the Petitioning Creditors did not file the petition for an improper purpose, thus the Rule 9011 test has not been met. Nevertheless, the Court also finds that the Petitioning Creditors did not fail to conduct a proper investigation prior to filing the petition, as evidenced by their success in meeting the § 303 requirements.

Kennedy contends that a reasonable inquiry into the facts would have indicated that: (1) he had virtually no non-exempt assets; and (2) he had generally been paying all of his other debts

as they became due, while a reasonable inquiry into the law would have indicated that: (1) the Petitioning Creditors were required to exhaust their state-court remedies prior to filing; and (2) the *Rooker-Feldman* doctrine precludes this Court from over-turning the Marion County Circuit Court's decision, which is the sole reason for the filing. (Dkt. No. 125 at 19). But, as discussed above, Kennedy may have access to a cause of action against Farm Bureau, among others; the Court finds that Kennedy was not generally paying his debts as they become due; and the Petitioning Creditors were not required to completely exhaust *all* state court remedies prior to filing. Further, as discussed below, the *Rooker-Feldman* doctrine is inapplicable in this case.

Accordingly, the Court finds that the Petitioning Creditors have not acted in bad faith and turns now to Kennedy's argument for permissive abstention under § 305(a).

### C. Abstention

Finally, Kennedy moves for discretionary abstention under § 305(a). Section 305(a) states: "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if— (1) the interests of creditors and the debtor would be better served by such dismissal or suspension . . . ." 11 U.S.C. § 305(a). Abstention is an extraordinary remedy. *In re State Park Bldg. Grp., Ltd.*, 316 B.R. 466, 476 (Bankr. N.D. Tex. 2004) (internal citations omitted). The decision to abstain is not reviewable. 11 U.S.C. § 305(c). The party seeking abstention bears the burden of proof and it is substantial. *In re Sherwood Enters, Inc.*, 112 B.R. 165, 167 (Bankr. S.D.Tex.1989). To carry this substantial burden, the party seeking abstention must show that the court's voluntary refusal to exercise jurisdiction better serves both the debtor and his creditors. *Id.* (*citing Farmer v. First Virginia Bank.* 22 B.R. 488 (Bankr. E.D. Va. 1982)). When deciding whether to abstain under § 305(a), courts in the Fifth Circuit consider several factors, including: (1) the economy and efficiency of

administration; (2) whether another forum is available or there are already proceedings pending in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and creditors are able to work out a less expensive out-of-court arrangement; (6) whether a non-federal insolvency has proceeded so far that it would be costly to start anew in bankruptcy court; and (7) the purpose for which bankruptcy jurisdiction has been sought. *In re Tex. EMC Mgmt., LLC*, No. 11-40008-H3-7, 2012 Bankr. LEXIS 700, at *8–9 (Bankr. S.D. Tex. Feb. 24, 2012).

Kennedy claims that abstention is appropriate, arguing: that the involuntary proceeding will not serve any legitimate bankruptcy purpose, thus the bankruptcy would amount to essentially a two-party dispute; that an alternative forum exists; that federal proceedings are unnecessary to reach a just and equitable solution; that entry of an order for relief will not promote the economy and efficiency of administration; and that the Petitioning Creditors have failed to exhaust their state-law collections remedies. (Dkt. No. 125 at 4–13). The Court considers each argument in turn.

### 1. *Two-Party Dispute*

Kennedy first argues that because he will not receive a discharge and he has few assets to liquidate, the twin purposes of Chapter 7 liquidation—the discharge of a debtor and the satisfaction of valid claims against the estate—cannot be served. (*Id.* at 4–5). This factor "has been used to further support a dismissal of an involuntary case that was filed not in favor of all creditors and the estate but to obtain a disproportionate advantage . . . ." 2 Collier on Bankruptcy ¶ 305.2 (16th ed. 2013). But Kennedy ignores one major asset he has access to: the cause of action against Farm Bureau. Kennedy, or a Trustee stepping into his shoes, has standing to

challenge the sale of that asset, while—as counsel for Farm Bureau has already argued—the Petitioning Creditors may not. And, according to the Petitioning Creditors, that asset alone could satisfy their claims against him. Moreover, Kennedy is not currently paying *anything* towards the judgment against him, opting instead to pay his recurring monthly obligations; his criminal restitution; and charitable contributions to his church. (*e.g.* Dkt. No. 128 at Exh. 9). Thus, a legitimate bankruptcy purpose—satisfaction of valid claims against the estate—may be fulfilled, at least in part, if relief is granted.

Kennedy also claims that where the bankruptcy proceeding is essentially a two-party dispute, courts have abstained. (Dkt. No. 125 at 5). But § 303(b)(2) specifically contemplates a two-party dispute by allowing a single creditor holding a claim greater than $15,325.00 that is not contingent as to liability or subject to a bona fide dispute to file an involuntary petition. 11 U.S.C. § 303(b)(2) (stating that an involuntary petition may be commenced "by *one or more* [creditors]") (emphasis added). Nevertheless, Kennedy cites two cases outside the Fifth Circuit—*In re Mountain Dairies, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2006) and *In re Spade*, 258 B.R. 221 (Bankr. D. Colo. 2001)—to support his claim that this Court should abstain. Both cases contain markedly different facts from the case at bar and are unpersuasive.

First, in *Mountain Dairies*, a single creditor filed an involuntary petition against the then-defunct alleged debtor corporation. *Mountain Dairies*, 372 B.R. at 629–30. The Court first dismissed the petition because the petitioning creditor failed to show it had a claim against Mountain Dairies that was not contingent as to liability or subject to a bona fide dispute. *Id.* at 630. Then, in dicta, the court stated that even if the petitioning creditor was an eligible petitioner under § 303, it would abstain because the involuntary bankruptcy was "essentially a two-party dispute for which the parties have adequate remedies in the state court." *Id.* at 634–35. The court

was particularly bothered by a forum selection clause in the contract between the petitioning creditor and alleged debtor, which specified the Supreme Court of the State of New York as the agreed-upon forum for any disputes between the parties. *Id.* at 635–36. But instead of abiding by the forum selection clause and pursuing its state court remedies, the petitioning creditor filed the involuntary petition. *Id.* at 636. Unlike *Mountain Dairies*, there is no such forum selection clause in this case. Moreover, the Petitioning Creditors have met their burden under § 303. Indeed, unlike the petitioning creditor in *Mountain Dairy*, the Petitioning Creditors in this case have successfully obtained, enrolled, and attempted to execute on their judgment against Kennedy.

Next, in *Spade*, the primary petitioning creditor first sued the alleged debtor in state court to collect on a personal guaranty. *Spade,* 258 B.R. at 224. In response, the alleged debtor filed a declaratory judgment action and, instead of filing an answer, the defendants filed the involuntary petition. *Id.* The bankruptcy court found that the petitioning creditors had met their burden under § 303, but elected to abstain under § 305(a)(1). *Id.* The court's primary reason for electing to abstain was the pending state-court litigation, which it characterized as "essentially a collection case." *Id.* at 225. It found that the petitioning creditors could not show any reason why their claims could not be litigated expeditiously in the state court action, which was already pending. *Id.* Unlike *Spade*, there is no pending state court litigation in this case. Instead, Kennedy argues that the Petitioning Creditors must be forced to return to state court and either appeal the Circuit Court's order—assuming they have standing to do so—or start anew in Chancery Court. The Court does not find that either *Mountain Dairies* or *Spade* mandate such an outcome, even if one or both cases was binding precedent upon this Court. Moreover, abstention under § 305(a) is discretionary: the *Mountain Dairy* and *Spade* courts were *justified* in abstaining based on the facts before them, but neither court was *required* to abstain.

### 2. *Alternative Forum*

Next, Kennedy argues that the Petitioning Creditors failed to exhaust their state-court remedies and the availability of an alternate forum requires abstention. In support of this position, Kennedy quotes *In re Cates,* 62 B.R. 179 (Bankr. S.D. Tex. 1986), where the court stated: "[a] creditor does not have a special need for bankruptcy relief if he can go to state Court to collect a debt." *Id.* at 181. But in *Cates*, as in *Spade*, the petitioning creditor had already "commenced and [was] maintaining a state court lawsuit to collect on the same claim" alleged in bankruptcy court. *Id.* Again, the Petitioning Creditors in this case have already obtained, enrolled, and attempted—unsuccessfully—to execute on the judgment they obtained against Kennedy. Thus, while the potential existence of an alternate forum is a factor for the Court to consider, it is not dispositive.

### 3. *Necessity of Federal Proceedings*

Third, Kennedy argues that, because the Petitioning Creditors may pursue their actions against Kennedy in state court, federal proceedings are unnecessary. While the Petitioning Creditors may be able to pursue fraudulent transfer claims against Kennedy under state law, this factor is one of many the court considers when deciding whether to abstain and, as Kennedy claims, it may *justify* a decision to abstain, but—like the other factors—it does not *require* abstention. And if the Petitioning Creditors lack standing in state court to set aside the Sherriff's sale—as counsel for Farm Bureau has previously argued—their only means of doing so may be in bankruptcy court, where a Trustee can pursue the cause of action in Kennedy's place.

### 4. *Economy and Efficiency*

Fourth, Kennedy argues that an order for relief will not promote administrative economy and efficiency because "the Court will be burdened with time consuming, expensive litigation to

undo the Sherrif's Sale . . . ." and "Kennedy and his creditors would languish in bankruptcy" while the Trustee attempts to set it aside. (Dkt. No. 125 at 11). Kennedy again cited *Spade* for support. But, unlike *Spade*, there is no duplicative litigation in this case. Thus, it makes no difference whether the time and expense to appeal the Sherrif's sale is spent by the Petitioning Creditors in state court or the estate in bankruptcy court. And their standing to set aside the sale in state court is questionable, whereas Kennedy's standing to do so is not. Moreover, the Petitioning Creditors are the only creditors not currently being paid and they have already languished in state courts as they unsuccessfully attempted to collect on their judgment against Kennedy. Thus they alone would suffer from any injustice caused by further delay.

### 5.  *Exhaustion of Remedies*

Finally, Kennedy argues that abstention is warranted because the Petitioning Creditors filed their petition for an improper purpose, namely to get this Court to overturn the Marion County Circuit Court and undo the Sherrif's sale. (Dkt. No. 125 at 12–13). Kennedy argues that abstention is warranted under the *Rooker-Feldman* doctrine, which "bars this court from 'sit[ting] in appellate review of state court decisions.'" (*Id.* at 13) (*quoting Necaise v. Necaise (In re Necaise),* 2013 Bankr. LEXIS 3601, at *8 (Bankr. S.D. Miss. Aug. 28, 2013)). But, as the Court noted at the Hearing, no final judgment has been entered on the merits of the Petitioning Creditors' motion to set aside the Sherrif's sale; thus, *Rooker-Feldman* is inapplicable.[14]

---

[14] In arguing the applicability of *Rooker-Feldman,* Kennedy points to the Marion County Circuit Court's final orders (1) denying the Petitioning Creditor's motion to set aside the Sherrif's sale; and (2) vacating its order granting a second writ of execution. (Dkt. No. 128 at Exhs. 31, 32). But neither order contains any judgment on the merits of the Petitioning Creditor's arguments: the order denying the motion to set aside simply states that "the Motion seeks equitable relief that cannot be granted by a court of law," (*Id.* at Exh. 31), and the order vacating the prior judgment states that "consistent with the Court's Order [denying the motion to set aside], the Court's Order of May 8, 2013 is hereby vacated . . . ." (*Id.* at Exh. 32).

# IV.   CONCLUSION

For the reasons stated above, the Court finds that the Petition for Relief should be granted. The Petitioning Creditors have met their burden under § 303; Kennedy has failed to show they acted in bad faith; and this Court is not inclined to abstain from exercising jurisdiction over the involuntary petition. Therefore, Kennedy's motion to dismiss should be denied. An order for relief on the Involuntary Petition will be entered.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Petition for Relief is **GRANTED** and Kennedy's motion to dismiss is **DENIED.**

**## END OF OPINION ##**